# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**THE L.E. MYERS COMPANY,**
**Employer Below, Petitioner**

**FILED**

July 20, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0269** (BOR Appeal No. 2052241)
                    (Claim No. 2015034136)

**JOEL A. BEHNKEN,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner The L.E. Myers Company, by Lisa Warner Hunter, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Joel A. Behnken, by Lawrence B. Lowry, his attorney, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on December 3, 2015. The Office of Judges reversed the decision in its September 14, 2017, Order and held the claim compensable for lumbosacral neuritis. The Order was affirmed by the Board of Review on February 26, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Behnken, a lineman, was injured in the course of his employment on June 15, 2015, while holding a steel plate in place while bent over. Mr. Behnken has a history of lower back problems. A lumbar MRI was performed on January 18, 2011, for a history of low back pain radiating into the left leg since a May 27, 2009, work injury. The MRI showed disc bulges with tears at L4-5 and L5-S1. The L5-S1 disc had a large herniation that was severely compromising the left lateral recess and most likely the S1 nerve root. Mr. Behnken underwent a lumbar laminectomy for an L5-S1 disc herniation on February 24, 2011.

1

On March 14, 2013, another lumbar MRI was performed. It showed a large disc herniation at L5-S1 impinging on the S1 nerve root. This was unchanged from the previous MRI. It was noted by Ronald Fadell, M.D., the interpreting physician, that this could show a recurrent or residual disc herniation since Mr. Behnken had undergone lumbar surgery between MRIs. Mr. Behnken sought treatment at Dayton VA Medical Center on April 16, 2013. He reported to Toban Raghdaa, M.D., that he had lower back pain that radiated into both legs. It was noted that he had lower back pain for two years and underwent surgery in 2011. Dr. Raghdaa diagnosed chronic low back pain. May of 2013 treatment notes from Dayton VA Medical Center indicate Mr. Behnken reported a history of back pain starting in 1995. He reinjured his back in 2009 and had surgery in 2011. Mr. Behnken's leg pain improved after surgery but had worsened over the previous two years. He was diagnosed with low back pain with radiculopathy. On May 31, 2013, the diagnoses changed to chronic low back pain and acute thoracic pain.

Mr. Behnken had a lumbar MRI on November 26, 2013, which showed a leftward disc herniation at L5-S1 that was smaller and showed less stenosis than the March 2013 MRI. The impression was improvement in the L5-S1 herniated disc. On February 10, 2015, Channhu Trinh, M.D., indicated Mr. Behnken reported worsening back pain over the last week as well as loss of bowel control four to five times in the last four months. He reported shooting pain in both legs. Dr. Trinh diagnosed worsening low back pain with bowel incontinence. A lumbar MRI was taken on April 23, 2015, that showed a mild disc bulge at L4-5 and a disc bulge at L5-S1 compromising the S1 nerve root. The findings were stable compared to the prior November of 2013 MRI. On May 6, 2015, Ziad Khatrib, M.D., indicated that Mr. Behnken reported the new problem of pain in his left toes. He also complained of chronic and persistent lumbar pain.

Following the injury at issue in the instant case, Mr. Behnken sought treatment at Beavercreek Medical Center Emergency Room on June 16, 2015. The notes indicate he presented with back pain and numbness in both feet due to an injury he sustained the previous day. He reported that he was holding a piece of steel in a bent over position and felt discomfort when he stood up. A lumbar CT scan showed degenerative changes at L5-S1 and a calcified disc bulge with effacement of the epidural space and lateral recess. Mr. Behnken was diagnosed with low back pain without sciatica. A treatment note by Dr. Khatrib dated June 17, 2015, indicates Mr. Behnken reported worsening back pain for the past week.

Several statements were submitted regarding the June 15, 2015, injury. James Isenberg and Danny Dixon stated that Mr. Behnken informed them on June 15, 2015, that he wanted to return to his hotel room, take some medication, and lie down because his back was hurting. David Scruggs indicated that on June 15, 2015, Mr. Dixon, Mr. Isenberg, and Mr. Behnken were working on a steel tower. After holding a steel plate that weighed 26.6 pounds, Mr. Behnken asked Mr. Isenberg if he could return to his hotel to lay down and take medication for his back. Mr. Scruggs called Mr. Behnken and asked about the problem. Mr. Behnken explained that his back hurt and that he needed to lie down but did not mention an injury sustained at work. The following day, Mr. Behnken called Mr. Scruggs to say that he was going to the doctor for a back injury he sustained the previous day. Mr. Behnken also filed an incident report that morning.

Patrick Cross stated that he arrived at the work site the day after Mr. Behnken was injured. Mr. Behnken called Mr. Scruggs that day and told him he hurt his back the day before and needed to see a doctor. Mr. Behnken arrived at the office that morning to complete the incident report and was in too much pain to leave his vehicle. He completed an incident report and stated that he was holding a plate while seated and his back started to hurt. Mr. Pence asked several times if the injury happened at work but Mr. Behnken did not answer.

Gary Fox noted in a statement that he was informed on June 15, 2015, that Mr. Behnken's back tightened up and that it happened regularly. Mr. Behnken requested permission to go to his hotel room, take medication, and relax. Mr. Scruggs called Mr. Behnken that day and Mr. Behnken reported that it was not a work-related problem. The following day, Mr. Behnken called Mr. Scruggs and told him that he hurt his back at work. Mr. Fox talked to Mr. Behnken the following day, June 16, 2015, and Mr. Behnken told him that he was holding a plate in place when he hurt his back. Mr. Behnken did not mention an injury to his co-workers.

Roger Pence stated that Mr. Behnken came to the office on June 16, 2015, and spoke with Mr. Pence. He told Mr. Pence that he had undergone back surgery in the past and that sometimes his back tightens and he needs to lay down. Mr. Pence asked Mr. Behnken if he was injured on the job but Mr. Behnken did not answer. Mr. Pence had Mr. Behnken complete an incident report. In the incident report, Mr. Behnken stated that he developed lower back pain after holding a steel plate. He did not report that to Mr. Pence when they talked the following day.

Following the June 15, 2015, injury, Mr. Behnken sought treatment for his lower back and legs. A June 22, 2015, treatment note by Lisa Parsons, CNP, indicates he reported an exacerbation of his low back pain and radiculopathy into the legs. Mr. Behnken reported that the exacerbation happened at work on June 15, 2015, while he was holding a piece of steel. Ms. Parsons noted a prior herniated disc and lumbar surgery in 2011. An MRI was taken on June 30, 2015, and compared to the prior April of 2015 study. Phillip Lanham, M.D., interpreted the results as showing a progression of the L5-S1 central canal stenosis with impingement on the S1 nerve root. The L5-S1 disc appeared to have an extruded disc fragment. There was mild bilateral neural foraminal narrowing and degenerative changes at L4-5.

Jonathan Paley, M.D., noted in a July 10, 2015, treatment note that Mr. Behnken was seen for a work-related low back injury sustained on June 15, 2015. Mr. Behnken stated that he developed severe back pain while holding a piece of steel in a bent over position. It was noted that he had a previous low back injury and surgery in 2010. Mr. Behnken had been working with no problems until June 15, 2015. On examination, his lumbar range of motion was significant hindered. Dr. Paley opined that Mr. Behnken suffered lumbosacral neuritis as a direct result of his work-related injury. He noted that while Mr. Behnken had prior low back problems, he was functioning with no issues until June 15, 2015. He also noted that the MRI performed after the injury showed a progression at L5 with stenosis and impingement of the S1 nerve.

July of 2015 treatment notes by Theodore Bernstein, M.D., indicate Mr. Behnken reported lower back pain with pain down both legs and numbness and tingling in the left calf and

3

foot. Dr. Bernstein reviewed the MRI and recommended surgery. He performed an L5-S1 redo decompression for the L5-S1 herniated disc on July 31, 2015.

In an August 12, 2015, treatment note, Dr. Paley noted that Mr. Behnken injured his lower back at work on June 15, 2015, while holding a steel plate in a bent over position. At the time of the injury, he was performing his job duties without issues. After the injury, he started to have significant back and leg pain. Dr. Paley noted that an MRI taken prior to the injury showed no new findings whereas an MRI taken after the injury showed significant progression of the stenosis at L5-S1 and an extruded disc fragment. Dr. Paley opined that the post injury MRI showed a worsening of Mr. Behnken's condition. He opined, based upon the evidence and his examination, that Mr. Behnken's work injury resulted in a significant aggravation of the preexisting L5-S1 disc herniation.

A lumbar x-ray taken on November 9, 2015, showed significant degenerative retrolisthesis from L1 to L4. There was loss of disc space height at L5-S1 and lumbar facet arthropathy at the lower lumbar levels. Another lumbar MRI was performed on January 5, 2016. It revealed post-surgical changes from the recent laminectomy; a broad based central and left disc protrusion at L5-S1, unchanged from the prior exam; and no change in the L4-5 disc protrusion.

On May 11, 2016, Mr. Behnken testified in a deposition that on June 15, 2015, he was holding a fifty pound piece of steel and hurt his back. He informed his supervisor that day that he was having back pain and needed to go to the hotel to lay down. The next morning, he met with the general foreman, the safety manager, and a superintendent and informed them of his back problem. Dr. Bernstein, who performed his previous surgery found three fragments of broken disc in his back and performed a second surgery on July 31, 2015. Mr. Behnken testified that following his 2010 surgery, he had persistent pain in both legs. He stated that he was off work for about a year, returned to work, and continued working until the June 15, 2015, injury.

In an October 20, 2016, letter, Scott Shaw, M.D., stated that Mr. Behnken was being treated at the Dayton VA Medical Center and had been off work since June of 2015. He was unable to return to work due to his current medical condition and ongoing treatment. On May 11, 2017, Eugene Lin, M.D., performed an independent medical evaluation in which he concluded that there was insufficient evidence that the extruded disc was related to the June 15, 2015, injury. His opinion was based upon medical records showing similar complaints, witness statements, and a history of waxing and waning disc protrusions at L5-S1. Dr. Lin opined that Mr. Behnken's symptoms on June 15, 2015, were the result of his preexisting condition and not his work duties.

The claims administrator rejected the claim on December 3, 2015. The Office of Judges reversed the decision in its September 14, 2015, Order and held the claim compensable for lumbosacral neuritis. It found that Mr. Behnken's allegation that he suffered a work-related injury on June 15, 2015, was supported by the medical records from Beavercreek Medical Center, which show he sought treatment the following day for a work-related injury. Medical records from Nurse Parsons, Dr. Paley, Nurse Wang, Dr. Shaw, and Dr. Garber also support a

finding that he was injured that day. The Office of Judges found that the weight of the evidence clearly shows that Mr. Behnken reported a work injury to his supervisors and filled out an incident report the day after the injury occurred.

The Office of Judges noted that Mr. Behnken injured his back in 2009 and underwent surgery for a herniated L5-S1 disc in 2011. Following the surgery, he continued to receive treatment. Mr. Behnken argued before the Office of Judges that the MRI taken two weeks after the June 15, 2015, injury shows significant progression of the spinal stenosis and disc fragments, which represents a new injury. The Office of Judges looked to this Court's decision in *Gill v. City of Charleston* 783 S.E.2d 857 (W.Va. 2016), in which the Court held that to the extent that an aggravation of a previous injury causes a discrete new injury, the new injury may be found compensable. The Office of Judges determined, in this case, that the evidence shows that the L5-S1 disc herniation predated the compensable injury. The preinjury MRIs clearly show the herniated disc, and Dr. Paley opined that the work injury resulted in an aggravation of the preexisting L5-S1 disc herniation. Therefore, the herniation could not be held compensable under *Gill*.

However, the Office of Judges found sufficient evidence to support a compensable diagnosis of lumbosacral neuritis. Dr. Paley evaluated Mr. Behnken on July 10, 2015, and opined that he was suffering lumbosacral neuritis as a direct and proximate cause of his work-related June 15, 2015, injury. His opinion was found to be persuasive and supported by the evidence of record. Though Mr. Behnken had a history of back problems, Dr. Paley noted that he was capable of working until the injury. The Office of Judges found that Mr. Behnken was off of work for a year and a half after his 2009 back injury and worked for four years until the compensable injury. He has not been released to return to work since June 15, 2015. The Office of Judges further found that the record shows Mr. Behnken developed new lumbar pathology after the compensable injury occurred. From his 2011 back surgery until the June 15, 2015, injury, there was no objective evidence of neurological abnormalities in the lower extremities. Though Mr. Behnken did report lower extremity symptoms, neurological sensory testing showed no objective evidence. After the compensable injury, Mr. Behnken had decreased sensation, as noted by Nurse Parsons, Dr. Paley, Nurse Wang, and Dr. Lin. Finally, the Office of Judges found that Mr. Behnken had to undergo a second back surgery on July 31, 2015, due to increased symptoms related to the compensable injury. The Office of Judges noted that Mr. Behnken required no additional surgery after his 2011 lumbar surgery until after the compensable injury occurred. The Office of Judges therefore held that he developed lumbosacral neuritis as a result of his compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision on February 26, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The evidence of record shows that Mr. Behnken sustained a lower back injury on June 15, 2015. Though he had prior low back problems, his symptoms greatly increased after the injury, necessitating a second back surgery and preventing him from returning to work. The Office of Judges was correct to hold the claim compensable for lumbosacral neuritis.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 20, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.